IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RORY DYSON, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| V. | § § | 1-15-CV-282  RP |
| STUART PETROLEUM TESTERS, INC. and SCOTT YARIGER, | § § § § | |
| Defendants | § § § | |

## ORDER

Before the Court are Plaintiff's Motion for Conditional Certification of a Collective Action and Authorization for Notice, filed July 6, 2015 (Clerk's Dkt. #15) and the responsive pleadings thereto. After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

## I.  BACKGROUND

Plaintiff Rory Dyson brings this action both individually and on behalf of all others similarly situated against defendants Stuart Petroleum Testers, Inc. ("Stuart") and Scott Yariger asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

Plaintiff alleges Defendants provide oil and gas well monitoring services to energy companies in multiple states including Texas, Arkansas and Louisiana.  Plaintiff states he, and other putative class members, are employed as "flow testers" whose primary duties consist of monitoring oil and gas wells.  (Plf. 1st Am. Compl. ¶¶ 16-19).

Plaintiff alleges he and other similarly situated workers were improperly classified by Defendants as independent contractors, rather than employees, despite the fact that Defendants wholly controlled their work.  Plaintiff states, although he and other similarly situated workers regularly worked in excess of forty hours per week, they were not paid overtime compensation as

required by the FLSA. (*Id.*¶¶ 20-36). Plaintiff further asserts Defendants' conduct was undertaken in willful, malicious and/or reckless disregard of the mandates of the FLSA. Specifically, Plaintiff alleges Defendants set up a paper profile designed to create the impression that flow testers were independent contractors, although in reality they were employees of Defendants. (*Id.*¶¶ 37-38). Plaintiff seeks monetary damages, attorney's fees and costs. (*Id.* ¶ 60).

Plaintiff has filed a motion seeking conditional certification of this lawsuit as a collective action under the FLSA. Plaintiff asserts there are other similarly situated individuals whose rights under the FLSA have been violated by Defendants and those individuals should be permitted to opt-in to this action. The parties have filed responsive pleadings to the motion and the matters are now ripe for determination.

## II. CERTIFICATION

### A. Applicable Law

The FLSA permits a court to order an action to proceed as a collective action on behalf of others similarly situated. The statute provides:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, unlike a class action filed under Federal Rule of Civil Procedure 23(c), a collective action under § 216(b) provides for a procedure to "opt-in," rather than "opt-out." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225 (5th Cir. 2011) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008).

The threshold issue to certifying a collective action under the FLSA is whether the plaintiff can show the existence of a class whose members are "similarly situated." The Fifth Circuit recognizes two approaches to use in making this determination. *See Mooney v. Aramco Servs.*

*Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  The first is a two-step conditional certification process known as the *Lusardi* approach, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).  The second approach is a Rule 23–style analysis known as the *Shushan* approach, after *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990).  Although the Fifth Circuit has declined to specifically adopt either test, both the Fifth Circuit and the Supreme Court have made statements implying that a Rule 23–type analysis is incompatible with FLSA collective actions.  *See Genesis Healthcare Corp., v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ( "Rule 23 actions are fundamentally different from collective actions under the FLSA"); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the F.R. Civ. P. 23 procedures").  Moreover, the majority of courts within this circuit have adopted the *Lusardi* two-stage approach.  *See, e.g., Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014) (applying *Lusardi*); *Mateos v. Select Energy Servs., LLC*, 997 F. Supp. 2d 640, 643 (W.D. Tex. 2013) (same); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage."  *Mooney*, 54 F.3d at 1216.  At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class."  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010).  "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."  *Mooney*, 54 F.3d at 1214.  If the court finds that the putative class members are similarly situated, then conditional certification is warranted and the plaintiff will be given the opportunity to send notice to potential class members.  *Id*.  After the class members have opted in and discovery is

complete, the defendant may then file a decertification motion–the second stage of the *Lusardi*

approach–asking the court to reassess whether the class members are similarly situated. *Mooney*,

54 F.3d at 1214. At that point the court will fully evaluate the merits of the class certification.

## B. Discussion

Plaintiff seeks conditional certification on behalf of a class of similarly situated persons.

Accordingly, the Court need only address the first stage of the *Lusardi* inquiry. Plaintiff seeks

certification with respect to:

> All current and former hourly-paid workers classified as independent contractors
> who performed work for Defendants associated with monitoring and maintaining oil
> and gas wells throughout the United States during the three-year period before the
> filing of this Complaint up to the date the Court authorizes notice.

(Plf. Mot. for Conditional Cert. at 19). Plaintiff's request is supported by declarations from both

himself and Alvin Garvey ("Garvey"). Both describe themselves as employed by Stuart as "flow

testers" who were classified as independent contractors, and thus did not receive overtime

compensation for hours worked in excess of forty hours per week, even though they regularly

worked more than forty hours per week. (Plf. Mot. for Conditional Cert. Exs. C-D).

Defendants maintain these declarations are insufficient to carry Plaintiff's evidentiary burden

for two reasons. They first argue Plaintiff has failed to show sufficient evidence of potential opt-in

plaintiffs, because Plaintiff has provided the declaration of only himself and Garvey. According to

Defendants, "a plaintiff must do more than show the mere existence of other similarly situated

persons, because there is no guarantee that those persons will actually seek to join the lawsuit."

*McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 805 (S.D. Tex. 2010) (quoting *Parker v.*

*Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007)). *See also Blake v.*

*Hewlett-Packard Co.*, 2013 WL 3753965, at *12 (S.D. Tex. July 11, 2013) (declarations by plaintiff

and single additional opt-in plaintiff "are simply too meager to support conditional certification on

a nationwide scale").

As Plaintiff points out, in the cases cited by Defendants the plaintiffs had conducted discovery prior to submitting their motion for conditional certification. *See Blake*, 2013 WL 3753965, at *5 ("In this case, the parties had at least five months of discovery before Plaintiffs' filing of their motion for conditional certification and notice"); *McKnight*, 756 F. Supp. 2d at 802 (noting parties had taken some discovery and submitted results of that work). This case, in contrast, is in its very early stages and no discovery has been conducted. Plaintiff also points out that other courts have rejected the notion that a plaintiff must submit evidence identifying other interested person. *See, e.g., Page v. Nova Healthcare Mgmt., L.L.P.*, 2013 WL 4782749, at *5 (S.D. Tex. Sept. 6, 2013) (noting disagreement, concluding plaintiffs need not present evidence of potential opt-in plaintiffs because element is not statutory requirement, has not been discussed in any circuit court opinion, unlike under Rule 23, there is no numerosity requirement in FLSA collective action and requiring evidence of purported class members "is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes"); *Black v. SettlePou, P.C.*, 2011 WL 609884, at *3 (N.D. Tex. Feb. 14, 2011) (characterizing defendant's position that plaintiff is required to identify and obtain preliminary support from potential class members as "putting the cart before the horse; there must only be a 'reasonable basis' to believe that other aggrieved individuals exist"); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) ("prov[ing] that others are interested in opting in to the lawsuit . . . is not a statutory requirement, and several courts have rejected it").

Moreover, to the degree evidence is necessary, Plaintiff has presented at least some evidence of other plaintiffs. Namely, in their declarations, both Plaintiff and Garvey aver that other flow testers were subject to the same working and pay conditions as they were, and state their belief that other flow testers may be interested in joining the lawsuit should it be certified as a collective action. (Plf. Mot. for Conditional Cert. Exs. C-D). The Court finds this sufficient to carry Plaintiff's burden at this early stage. *See, e.g., Pacheco v. Aldeeb*, 2015 WL 1509570, at *8 (W.D.

Tex. Mar. 31, 2015) (two declarations attesting "many" current and former employees would join

lawsuit sufficient basis for conditional certification); *Reid v. Timeless Restaurants, Inc.*, 2010 WL

4627873, at *3 (N.D. Tex. Nov. 5, 2010) (finding "evidence from two individuals who experienced

similar employment pay practices . . . and [who] stated that they are aware of others who also

experienced them" sufficient to support motion for conditional certification); *Tolentino v. C & J*

*Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 653 (S.D. Tex. 2010) (finding two declarations of

similarly situated individuals and complaint sufficient to demonstrate existence of employees who

would opt in).

Defendants also contend Plaintiff has failed to provide evidence of a widespread

discriminatory plan.  They maintain the identical, conclusory, statements in the two declarations

submitted by Plaintiff fall short of the evidence necessary for conditional certification.  *See H & R*

*Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (affidavits of the two plaintiffs which

simply state they believe other workers were discriminated against in similar ways insufficient basis

to certify collective action).  *See also Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D.

Tex. 2012) (some factual support for allegations of class-wide policy or practice must be shown to

authorize notice).

Admittedly, the declarations submitted by Plaintiff are couched in general terms.  However,

each declarant states he worked with other flow testers that performed work for Stuart, that the

other flow testers performed similar work, were paid hourly, and were not paid overtime.  (Plf. Mot.

for Conditional Cert. Exs. C-D).  In replying to Defendants, Plaintiff also submitted a second

declaration from Garvey in which he reiterates that he and other Stuart flow testers were treated

the same way.  More specifically, Garvey states because he worked for Stuart for over a year, he

became familiar with company-wide practices due to the fact that "he worked closely with other flow

testers and visited with them about their jobs, pay, and hours."  (Plf. Reply Ex. 1 ¶ 7).  Further,

Garvey states he believes Stuart's policies applied to all flow testers at Stuart's locations in Texas,

Louisiana and Arkansas. (*Id*. ¶ 8). The Court finds Garvey's testimony that he acquired knowledge of Stuart's practices by way of his own employment with the company, as well as specifically inquiring of other workers concerning their experiences, a sufficient showing of a widespread discriminatory plan. *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 539-40 (S.D. Tex. 2008) (certifying class even though putative class members were store managers working in various locations under supervision of different individuals because there was evidence of common policy); *Blake v. Colonia Savings, F.A.*, 2004 WL 1925535, at *2 (S.D. Tex. Aug. 16, 2004) (approving notice to loan officers in defendant's Dallas office and those in remote locations based on evidence that company's policies extended to all locations). *See also Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (conditionally certifying class where all workers in potential class are alleged to have been subjected to same unlawful practices); *Salinas-Rodriguez v. Alpha Servs, L.L.C.*, 2005 WL 3557178, at *3 (S.D. Miss. Dec. 27, 2005) (at initial stage affidavits stated in generalized terms sufficient because Plaintiffs cannot be expected to have elaborate knowledge of circumstances facing other workers that were not members of Plaintiffs immediate crew, requiring additional proof at notice stage would overlook purpose behind two-stage inquiry). The Court thus concludes Plaintiff has presented sufficient to meet the slight burden imposed at this initial stage. *See Quintanilla v. A & R Demolitina, Inc.*, 2005 WL 2095104, at *15 (S.D. Tex. Aug. 30, 2005) (allegations and affidavits that employer consistently refused to pay hourly, nonexempt workers performing manual labor overtime rates for hours worked in excess of statutory limit, by either inaccurately or falsely recording number of hours worked on timesheets prepared by employer provides requisite factual nexus for certification); *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842 at *4 (N.D. Tex. Oct. 7, 2004) (where plaintiff alleges putative class members were paid under same regimen, fact that employees had somewhat different duties and rates of pay is immaterial).

As both of Defendants' challenges to the adequacy of Plaintiff's motion for conditional

certification fail, the motion is hereby granted.

## III.  DEFINITION AND NOTICE ISSUES

As the Court has concluded conditional certification is appropriate, matters of notice and proposed definition of the collective action must be addressed.

### A.  Definition of Collective Action

Defendants raise several objections to the definition proposed by Plaintiff for the collective action.  As set forth above, Plaintiff proposes the following definition:

> All current and former hourly-paid workers classified as independent contractors who performed work for Defendants associated with monitoring and maintaining oil and gas wells throughout the United States during the three-year period before the filing of this Complaint up to the date the Court authorizes notice.

Defendants propose the Court instead use the following definition:

> All current and former hourly-paid flow testers, hired in their individual capacity and classified as independent contractors, who performed work for Defendants associated with monitoring and maintaining oil and gas wells in Texas and serviced by Stuart Petroleum, Inc.'s Pleasanton, Texas location, during the three-year period before the date the Court authorizes notice.

Defendants argue their definition is more appropriate for several reasons.

First, they contend the proposed class should be limited to flow testers, because Plaintiff's allegations are limited to those employed as flow testers.  Plaintiff, however, points out that Garvey states Stuart used five or six different job titles, including flow back hands, well testers, and well operators, for persons performing the same job duties as flow testers.  (Plf. Reply Ex. 1 ¶ 9). Plaintiff further points out the proposed definitions's use of the limiting phrase "associated with monitoring and maintaining oil and gas wells" makes clear the class is not intended to include other hourly paid workers with different job duties.  Defendants do not present any contravening argument or evidence.  Accordingly, the Court finds this evidence sufficient evidence to meet the "fairly lenient" burden imposed at this stage.  *See Montelongo v. Hous. Auth. City of El Paso*, 2010 WL 2838354, at *3 (W.D. Tex. July 16, 2010) (relying on declarations stating functions and duties

of workers bearing different titles were essentially equivalent in conditionally certifying class); *Tolentino*, 716 F. Supp. 2d at 651-52 (same, noting "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement").

Defendants also contend the class definition should be limited solely to those hired individually as independent contractors. According to Defendants, Stuart hired contractors both individually and through business entities. As they point out, the FLSA permits only individuals, not entities, to bring suit. *See* 28 U.S.C. § 216(b) (FLSA action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees").

Defendants' argument fails for two reasons. First, Plaintiff is not proposing that any business entity would be permitted to join as an opt-in plaintiff. Rather, the ability to opt-in is limited to individuals. Second, as Plaintiff points out, the definition of "employee" under the FLSA is particularly broad. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (definition of employee under FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."). The Fifth Circuit looks to "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself" by considering five non-exhaustive factors:

> 1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

Plaintiff contends Defendants deliberately used the fiction that its flow testers were independent contractors, rather than employees of Defendants. (Plf. 1st Am. Compl ¶¶ 37-38). Plaintiff specifically alleges Defendants controlled the activities of flow testers while on Stuart work sites, including the site to be worked, the hours, the order of work performed, and the rules and safety protocols followed. (*Id*. ¶ 26). In his declaration, Garvey reiterates those conditions, and

further states "[e]ven though some flow testers were paid through a business entity, the reality is that at all times Stuart Petroleum treated me and all of my co-workers as employees and our relationship with Stuart Petroleum was that of employer/employee."   (Plf. Reply Ex. 1 ¶ 6). Accordingly, Defendants' proposed limitation to the class definition is rejected.

Third, Defendants argue the definition should be geographically limited.  Specifically, they maintain the definition should include only individuals who worked from Stuart's Pleasonton, Texas, the location from which both Plaintiff and Garvey worked.  However, as discussed above, Plaintiff has presented testimony from Garvey stating his understanding that the policies he describes "apply to all of the flow testers at Stuart Petroleum's locations in Texas, Louisiana, and Arkansas." (*Id*. ¶ 8).  This is sufficient to meet Plaintiff's burden at this stage of the litigation.

Finally, Defendants argue the three-year limitations period under the FLSA should be measured from the date notice is issued, rather than the date Plaintiff's complaint was filed.  In the reply, Plaintiff concedes this is the proper date.  The Court will thus adopt Defendants' language on this point.

Accordingly, the following definition of the collective action will henceforth be employed :

> All current and former hourly-paid workers classified as independent contractors who performed work for Defendants associated with monitoring and maintaining oil and gas wells throughout the United States during the three-year period before the date the Court authorizes notice.

## B.  Notice Issues

Plaintiff also requests the Court order Defendants to produce contact information in an electronic format to facilitate the sending of the notice. Plaintiff further seeks permission to send the notice by both first class mail and by electronic mail.  Plaintiff additionally requests class members be permitted to execute their consent form electronically.  Finally, Plaintiff requests that class members be given sixty days to opt in to this action, and that a second notice be sent to potential class members thirty days prior to the deadline to opt in to individuals who have not opted

in at that point.

As to the production of contact information, Defendants' only objection is to the breadth of Plaintiff's request, which includes Social Security numbers, birth dates and phone numbers.[1] Defendants suggest the first two requests, for Social Security numbers and birthdates, raise significant privacy concerns.  In reply, Plaintiff agree to omission of those two categories of information.  Defendants also suggest the final category, phone numbers, is simply unnecessary. Plaintiff, in turn, argues phone numbers are a more stable form of contact, as they do not change when individuals move.  Plaintiff also cites a plethora of cases in which courts have allowed discovery of phone numbers of putative class members. (Plf. Mot. for Conditional Cert. at 13 n.48). The Court agrees with both Plaintiff and the other courts in the cases cited by Plaintiff.  Accordingly, Plaintiff's request for names, addresses, email addresses, and phone numbers of the class members is granted.

Defendants also object to Plaintiff's proposal that opt-in plaintiffs be permitted to execute their consent by means of an electronic signature.  Defendants point out that the FLSA requires that a plaintiff to any FLSA collective action "gives his consent in writing to become such a party." 29 U.S.C. § 216(b).  They also point to the Supreme Court's holding that a typewritten name did not suffice as a signature for purposes of Rule 11, concluding that in Rule 11 the word "signed" meant "a name handwritten (or a mark hand placed)." *Becker v. Montgomery*, 532 U.S. 757, 764 (2001).  *See also Scarborough v. Principi*, 541 U.S. 401, 416 (2004) (suggesting Rule 11's signature requirement is "a think twice prescription that stem[s] the urge to litigate irresponsibly") (internal quotations omitted).

For several reasons, the Court is not convinced by Defendants' argument.  First, the Court

---

[1]   Plaintiff originally requested Defendants be ordered to produce contact information within ten days. Defendants request they be afforded thirty days to provide contact information and Plaintiff agrees to permit the additional time.

notes the FLSA, unlike Rule 11, does not contain a signature requirement.  Rather, it requires that

the consent be "in writing."  Courts have recognized the distinction in the arbitration context, holding

that the requirement under the Federal Arbitration Act ("FAA") that an agreement be in writing does

not require that the agreement contain a signature.  *See Caley v. Gulfstream Aerospace Corp.*, 428

F.3d 1359, 1369 (11th Cir. 2005) (no signature is needed to satisfy FAA's requirement that

arbitration agreement be "in writing"); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002)

("FAA requires arbitration agreements to be written, it does not require them to be signed"); *Valero*

*Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) (FAA "does not require that a

charter party be signed in order to enforce an arbitration agreement contained within it"); *Perez v.*

*Lemarroy*, 592 F. Supp. 2d 924, 930 (S.D. Tex. 2008) (no signatures are necessary to bind parties

to arbitration agreement).

Second, Congress addressed this very issue by passing the Electronic Signatures in Global

and National Commerce Act ("E–Sign Act") in 2000.  Under the E–Sign Act, "with respect to any

transaction in or affecting interstate or foreign commerce" a "signature, contract, or other record

relating to such transaction may not be denied legal effect, validity, or enforceability solely because

it is in electronic form."  15 U.S.C. § 7001(a)(1).  Similarly, under Texas' enactment of the Uniform

Electronic Transactions Act, a "signature may not be denied legal effect or enforceability solely

because it is in electronic form" and "[i]f a law requires a signature, an electronic signature satisfies

the law."  TEX. BUS. & COM. CODE ANN. § 322.007(a) & (d).

Finally, as our sister court has observed, "we live in a time when all manner of commercial

transactions are routinely cemented by electronic submission."  *Mraz v. Aetna Life Ins. Co.*, 2014

WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014).  This reality is recognized in both the Federal Rules

of Civil Procedure and this Court's rules.  *See* FED. R. CIV. P. 5(d)(3) (permitting courts to "allow

papers to be filed, signed, or verified by electronic means that are consistent with any technical

standards established by the Judicial Conference of the United States"); W.D. Tex. Admin. Policies

and Proc. for Electronic Filing, Section 14 (allowing electronic signature).[2]  Thus, as Plaintiff point

out, other courts have approved the use of online, electronic signature opt-in forms.  *See White v.*

*Integrated Elec. Tech., Inc.*,  2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (approving request

to allow class members to execute electronic consent forms, noting other "courts have also

approved the use of online, electronic signature opt-in forms," and citing cases).  *See also Bland*

*v. Calfrac Well Servs. Corp*., 2013 WL 4054594, at *3 (W.D. Pa. Aug. 12, 2013) (approving without

discussion use of signature via e-mail); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *4 (N.D.

Tex. Nov. 29, 2012), *adopted in* 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (approving unopposed

request that class members be given option of executing consent forms online via an electronic

signature service).  Accordingly, the Court concludes Plaintiff may employ its proposed electronic

signature method for execution of consent forms.

Defendants offer no other objection to Plaintiff's proposals concerning the wording of the

notice, the mailing, or deadlines imposed.  Accordingly, the remainder of Plaintiff's proposals are

hereby adopted.

## IV.  CONCLUSION

The Court hereby **GRANTS** Plaintiff's Motion for Conditional Certification of a Collective

Action and Authorization for Notice (Clerk's Dkt. #15) conditionally certifying a class under the

FLSA of:

> All current and former hourly-paid workers classified as independent contractors
> who performed work for Defendants associated with monitoring and maintaining oil
> and gas wells throughout the United States during the three-year period before the
> date the Court authorizes notice.

---

[2]  Indeed, the Internal Revenue Service permits the use of electronic signature in tax filings.  *See* 26 U.S.C. § 6061(b) (directing development of procedures for acceptance of digital or electronic signatures).  *See also United States v. Hunte*, 559 F. App'x 825, 829 (11th Cir. 2014) (upholding criminal conviction based in part of evidence of electronic signature of defendant on various false filings); *United States v. Lawrence*, 557 F. App'x 520, 530 (6th Cir.) cert. denied, 135 S. Ct. 223 (2014) (same, where defendant authorized use of Personal Identification Number which IRS regulations treat as method of signing return electronically).

Defendants are hereby **ORDERED** to provide counsel for Plaintiff **within thirty (30) days** of this Order in an electronic format names, all known addresses, all known email addresses, and all known phone numbers of the potential class members.

The Court further **ORDERS** the issuance and execution of notice to potential class members as set forth herein.  Defendants and Plaintiff shall confer and come to an agreement **within fifteen (15) days** of this Order regarding the form of the Notice, in compliance with the rulings herein, to be distributed to potential class members.

**SIGNED** on August 27, 2015.

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE