IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RORY DYSON, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| V. | § | 1-15-CV-282 RP |
| STUART PETROLEUM TESTERS, INC. and SCOTT YARIGER, | § § § § | |
| Defendants | § § | |

## ORDER

Before the Court is the Parties' Joint Motion for Approval of Settlement Agreement, filed January 12, 2016 (Clerk's Dkt. #43). After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

### I. BACKGROUND

Plaintiff Rory Dyson ("Dyson") brings this action both individually and on behalf of all others similarly situated against defendants Stuart Petroleum Testers, Inc. ("Stuart") and Scott Yariger asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

Plaintiff alleges Defendants provide oil and gas well monitoring services to energy companies in multiple states including Texas, Arkansas and Louisiana. Plaintiff states he, and other putative class members, are employed as "flow testers" whose primary duties consist of monitoring oil and gas wells. (Plf. 1st Am. Compl. ¶¶ 16-19).

Plaintiff alleges he and other similarly situated workers were improperly classified by Defendants as independent contractors, rather than employees, despite the fact that Defendants wholly controlled their work. Plaintiff states, although he and other similarly situated workers regularly worked in excess of forty hours per week, they were not paid overtime compensation as required by the FLSA. (*Id*.¶¶ 20-36). Plaintiff further asserts Defendants' conduct was undertaken

in willful, malicious and/or reckless disregard of the mandates of the FLSA.  Specifically, Plaintiff alleges Defendants set up a paper profile designed to create the impression that flow testers were independent contractors, although in reality they were employees of Defendants.  (*Id*.¶¶ 37-38). Plaintiff seeks monetary damages, attorney's fees and costs. (*Id*. ¶ 60).

By order dated August 27, 2015, the Court granted Plaintiff's motion to conditionally certify this action as a collective action under 29 U.S.C. § 216(b). The putative class is defined as:

> All current and former hourly-paid workers classified as independent contractors who performed work for Defendants associated with monitoring and maintaining oil and gas wells throughout the United States during the three-year period before the date the Court authorizes notice.

The Court also approved the form of, and ordered the issuance of, notice to potential class members.  In addition to Dyson, Alvin Garvey, Mike Tyree, Larry Blackwell, Jesus Espinoza, Kim Birdwell, Chad Sowell, Kris West, and Michael Williams (collectively "Plaintiffs") opted to join the case.  (Joint Mot. Ex. A ¶ 1).

By way of their motion, the parties state they have agreed to settle their dispute and seek approval of their proposed Settlement Agreement, attached as Exhibit A to their motion.

## II.  APPLICABLE LAW

The FLSA permits suit by "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to recover unpaid minimum wages, overtime compensation, and liquidated damages from employers who violate the statute's provisions.  29 U.S.C. § 216(b).  An FLSA collective action follows an "opt-in" procedure in which "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  *Id.*

FLSA claims "may be compromised" after a court reviews and approves a settlement. *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 736 (W.D. Tex. 2010).  *See Sims v. Housing Auth. City of El Paso*, 2012 WL 10862119, at *2 (W.D. Tex. Feb. 29, 2012) (same, but noting

dearth of Fifth Circuit authority on point).  Courts may approve a settlement if it reflects "a reasonable compromise over issues" that are "actually in dispute."  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).  "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action . . . . Rather[,] the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages."  *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008).

### III.  DISCUSSION

**A.    Bona Fide Dispute**

Courts first look to "whether there exists a bona fide dispute" under the FLSA regarding the amount of hours worked or compensation due.  *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005).  Here, Plaintiffs alleged that Defendants violated the FLSA because Defendants classified their flow tester work force as independent contractors instead of employees.  (Plf. 1st Am. Compl. ¶¶ 22, 30).  Defendants denied Plaintiffs' allegations and argued that they properly classified the workers in question as independent contractors.  (Def. 1st Am. Ans. ¶ 30).  Defendants also maintained that even if their classification was erroneous, any possible violation was perpetrated in good faith, and was not willful, thereby limiting any possible recovery to a two-year statute of limitations without liquidated damages.  (*Id*. ¶¶ 61-64).  The parties continue to insist their respective positions are legally correct.  (Joint Mot. at 2).  There is thus a bona fide dispute.  *See Martin v. Spring Break '83 Prod., L.L.C.*, 688 F.3d 247, 255-56 (5th Cir. 2012) (finding bona fide dispute where the parties disputed "the number of hours for which [plaintiffs] are owed their set rate of pay.").  *See also Sims*, 2012 WL 10862119, at *6 ("The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that

invalid waiver of the FLSA's protections as a valid settlement of a legal claim.").

## B.     Fair and Reasonable Resolution

Having found a bona fide dispute, the Court looks to whether the proposed settlement agreement is fair and reasonable.  "Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires court approval to finalize a proposed class action settlement."  *Sims*, 2012 WL 10862119, at *3.  "Thus, the Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action."  *Altier v. Worley Catastrophe Resp., LLC*, 2012 WL 161824, at * 14 (E.D. La. Jan. 18, 2012).

The Fifth Circuit directs courts to consider six factors in evaluating proposed settlement agreements in class actions:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

As to the first factor, there is no evidence before this Court of fraud or collusion.  The parties assert they have been represented by able counsel and have entered into a settlement agreement to eliminate the risks they face in litigating their continued differences.  The Court thus finds that the first factor favors finding a fair and reasonable agreement.

As to the second factor, this case was filed less than one year ago, in April 2015.  The live complaint was not filed until June 2015.  While the parties have already litigated a motion to dismiss and a motion for conditional certification, the discovery and dispositive motion deadlines, as well as the trial date are all forthcoming.  As noted above, the parties maintain their settlement

agreement would compromise disputed claims, and avoid the risks of further litigation. The Court thus finds that the second factor favors finding a fair and reasonable agreement.

Third, the Court evaluates settlement in light of the stage of the proceedings and the amount of discovery completed. Although this case has not progressed beyond the preliminary stage, the parties have engaged in motion practice, as outlined above. Nonetheless, settlement at this stage would reduce expense as the "issues of decertification and dispositive motions [would be] avoided because of the progress of settlement negotiations." *Collins*, 568 F. Supp. 2d at 726 The third factor thus favors finding a fair and reasonable agreement.

As to the fourth factor, the Court must ask whether there are any obstacles to the merits of the case. As noted above, the parties disagree as to both legal and factual issues in this case. However, they do not point to any other obstacles preventing resolution of this action. The fourth factor thus favors finding a fair and reasonable agreement.

Fifth, the Court evaluates the proposed settlement agreement against the possible range of recovery and the certainty of damages. The parties disagree as to whether any plaintiff is entitled to relief as Defendants contend each was properly classified as an independent contractor. Defendants also contest the amount of damages, arguing limitations will act to limit any possible recovery. Against these disagreements, the parties' Settlement Agreement proposes disbursing a total of $160,000 to Plaintiffs and their counsel within ten days of approval and execution of the Settlement Agreement. The award received by each Plaintiff is a sum certain. (Joint Mot. Ex. A ¶ 3). Thus the fifth factor, contrasting the broad and uncertain range of potential damages and recoveries with the definite and certain result of the proposed Settlement Agreement, favors finding a fair and reasonable agreement.

Finally, the Court evaluates the respective opinions of the participants, including class counsel, class representative, and the absent class members. When reviewing settlement agreements, courts are "entitled to rely upon the judgment of experienced counsel for the parties."

*Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977).  In this case, the parties and their counsel agree the Settlement Agreement is a fair and reasonable compromise of the claims asserted in this action.  The parties are represented by able and experienced counsel.  With regard to "absent class members," potential plaintiffs who have not opted into suit do not waive their individual rights as a result of the Settlement Agreement.  Accordingly, the sixth factor favors finding a fair and reasonable agreement.

Applying the six factors laid out by the Fifth Circuit, the Court thus finds that the Settlement Agreement is fair and reasonable.

**C.     Attorney's Fees**

The Settlement Agreement directs that Plaintiffs' counsel be paid a percentage of the total agreed disbursement as fees for their work.  Specifically, in the joint motion the parties state Dyson, as lead plaintiff, executed a contingency fee agreement to pay counsel 40% of the gross recovery plus litigation expenses.  (Joint Mot. at 3).

"[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."  *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).  In doing so, the Court thus addresses two issues.  First, the propriety of determining attorney's fees as a percentage of the total award, rather than, for instance, as a function of hours worked at an appropriate rate of pay.  Second, insofar as fees may be calculated as a percentage of the total amount of the settlement, the Court addresses what percentage is appropriate.

As a preliminary matter, "use of a common fund to pay attorney's fees in class action settlements is well established."  *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673 (N.D. Tex. 2010).[1]

---

[1] Although the settlement in this case is not specifically denominated as a common fund, the Settlement Agreement specifies a total amount to be paid by Defendants, and divides the award based on the 40% contingency fee agreement between Dyson and counsel.

However, courts must "carefully scrutinize the attorneys' fees award in a common fund settlement because the interests of the attorneys conflict with those of the class]." *Id*. Moreover, courts are not "bound by the agreement of the parties as to the amount of attorneys' fees." *Id*.

Plaintiffs request that attorney's fees be calculated as a percentage of the common fund. Specifically, they assert such fees are "reasonable and fair" and "within the normal range for contingency fee awards." (Joint Mot. at 3). The percentage method is appropriately reviewed under the framework set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) to determine whether the fee is reasonable. *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 860 (E.D. La. 2007) (citing *Strong*, 137 F.3d at 851-52 & n.5). Under that framework, a benchmark fee is checked against twelve factors to determine the ultimate reasonableness of the fee. *See Strong*, 137 F.3d at 850.

A benchmark, or lodestar, fee is generally calculated by multiplying a reasonable hourly rate by the number of hours reported by counsel. In cases where the litigants propose a percentage calculation for fees, although not explicitly adopted by the Fifth Circuit, district courts generally begin by looking to the parties' proposed percentage as the starting point to determine the benchmark fee. *Klein*, 705 F. Supp. 2d at 674. In this case, the parties have suggested a benchmark fee of 40%.

To support the fee, the parties suggest that 40% is within the normal range for contingency fee awards in FLSA collective actions, and cite several district court decision approving a 40% contingency fee. Though Defendants do not oppose a 40% fee and Dyson apparently agreed to pay 40%, the Court must "carefully scrutinize the attorneys' fees award in a common fund settlement because the interests of the attorneys conflict with those of the class." *Klein*, 705 F. Supp. 2d at 673. Defendants have no incentive to police attorney's fees which are subtracted from a fixed total award, and the Fifth Circuit has repeatedly held contingency fee agreements between attorneys and their clients are not beyond judicial control. *See Karim v. Finch Shipping Co. Ltd.*,

374 F.3d 302, 309 (5th Cir. 2004) (noting federal court's "well-recognized power" to reform contingent fee contracts).

A review of Fifth Circuit precedent suggests a benchmark fee of 30% is more appropriate in this case. Contrasted with the parties' proffered 40%, "[t]he Manual for Complex Litigation states that '[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund.'" *Klein*, 705 F. Supp. 2d at 675 (quoting MANUAL FOR COMPLEX LITIGATION (Fourth) § 14.121 (2010)). "The majority of common fund fee awards fall between twenty and thirty percent." *In re Harrah's Entm't, Inc.*, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998). *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (noting district court found 30% contingency fee "is a reasonable rate"). Because a benchmark fee of 30% is more common and the parties have not proffered exceptional circumstances that justify raising the benchmark and thereby reducing Plaintiffs' recovery, this Court applies a benchmark fee of 30%.

The Court next considers the *Johnson* factors to determine whether a deviation from the benchmark percentage is appropriate. *In Johnson*, the Fifth Circuit set out twelve factors for a court to consider in making this determination:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

The Court acknowledges that not every factor need necessarily be considered. *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997). However, disappointingly, the only factor addressed in the parties' joint motion is their assertion that the 40% contingent fee is "within the normal range" and thus customary. The Court has addressed, and rejected, that assertion

above.

Because the parties have failed to address anything beyond the fifth factor, the Court is left without any information to address the first, fourth, seventh, ninth, tenth and eleventh factors. As to the remaining factors, nothing in the parties' pleadings has suggested any particular novelty or difficulty to the legal issues in this case, and thus there is nothing to suggest any special skill was required on the part of counsel.

The only remaining factor is the eighth, the amount of recovery involved and the results obtained. In the absence of any showing by the parties, by anecdotal comparison or empirical analysis, that the recovery attained is exceptional among similarly situated cases, the Court's review finds the eighth factor does not counsel in favor of an award of attorney's fees greater than 30% of Plaintiffs' recovery.

In light of the foregoing, the Court finds that a 30% attorney's fee award from the total award of $160,000 is appropriate. Accordingly, the award to each plaintiff, set forth in Schedule A of the Settlement Agreement, should be increased pursuant to the same calculation used to determine those award amounts, to reflect that reduction.

## IV.  CONCLUSION

The Court hereby **GRANTS in PART** the Parties' Joint Motion for Approval of Settlement Agreement (Clerk's Dkt. #43). The Court approves the Settlement Agreement in all respects except the amounts to be paid in attorney's fees. The Court **REDUCES** the amount requested in

attorney's fees in accordance with this Order.

    **SIGNED** on February 29, 2016.

                                              ROBERT L. PITMAN
                                              UNITED STATES DISTRICT JUDGE